(137 So. 657)

**CROW, Tax Collector, v. GENERAL CABLE CORPORATION.**

I Div. 692.

Supreme Court of Alabama.
Nov. 19, 1931.

Lyons, Chamberlain & Courtney and Gordon, Edington & Leigh, all of Mobile, for appellant.

Armbrecht, Hand & Twitty, of Mobile, for appellee.

BOULDIN, J.

The purpose of this proceeding is to test the right of General Cable Corporation, appellee, to an exemption of its property from a special local tax by the county of Mobile.

By an act approved February 18, 1927, General Acts 1927, page 55, "For the purpose of encouraging the building, extending and operating" manufacturing plants in this state, the governing body of any county in which it is proposed to locate or extend such plant is empowered to "remit the taxes assessed" on such plant or extension, including the lands on which same is located, "for all county * * * purposes" (section 1) for a period not exceeding five years.

To obtain the benefits of such exemption, the person proposing to locate such plant shall make application in prescribed form to the governing body of the county, and, if granted, an order shall be made and entered of record "allowing such exemption."

The act provides: "All such property must be returned to the State for taxation, unless exempted therefrom." Section 2.

On August 20, 1928, on proper application, an order was made by the governing body of Mobile county, exempting the proposed plant of appellee "from taxation for all county purposes for a period of five years from the date of completion" of the plant. It was completed May 31, 1929.

By a local law approved August 10, 1927, Local Acts of 1927, page 151, Mobile county, for the purpose of constructing concrete roads and bridges, was authorized to incur indebtedness, and issue bonds, when approved by the electorate; and to levy and collect an annual tax on "all the taxable property situated" in the county to meet the interest and principal of the bonds.

Pursuant to this act the county had levied a special road and bridge bond tax of four mills.

The inquiry is: Does the exemption of complainant's property from taxation for all county purposes cover this road and bridge tax, or is complainant's property still subject to that tax?

██ The legislative power to exempt industrial plants from taxation for a limited period as an inducement to the location of same in the state is not to be questioned. Whether the benefits to accrue warrant such exemption is a matter of legislative policy. That the Legislature may delegate the power to local governmental units, in the absence of constitutional restrictions, is also the law. State v. Alabama Fuel & Iron Co., 188 Ala. 487, 66 So. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752; State v. Birmingham Southern R. Co., 182 Ala. 475, 481, 62 So. 77, Ann. Cas. 1915D, 436; Phœnix Carpet Co. v. State, 118 Ala. 152, 22 So. 627, 72 Am. St. Rep. 143; Moog v. Randolph, 77 Ala. 602; 2 Cooley, Taxation, § 653, § 659, § 669.

█ While exemptions from taxation are to be strictly construed, the plain and obvious import of the statute will be given effect, so long as constitutional restrictions are not violated.

The exemption statute above outlined granting exemptions from taxation for "all county purposes" as an inducement to the location of manufacturing plants in the state, standing alone, is in no way ambiguous or uncertain. It is prospective in character; exempts from taxation for all county purposes for the period of five years. It surely imports such properties shall be tax free, so far as county taxes go, during that period. That the road and bridge bond tax here involved is one for county purposes is not to be questioned.

█ So, unless a restriction is imposed by some constitutional provision, or by some subsequent legislative act, we can see no reasonable ground to hold that complainant's property is not exempt from such tax.

█ Appellant takes the view that such restriction is to be found in Amendment No. 290 of the Constitution, Acts of 1923, page 594. This amendment empowered Mobile county to incur an indebtedness and issue bonds for the construction of concrete or better than concrete surfaced roads in the county, the amount of such indebtedness not to exceed 6½ per cent. of the "assessed values" of property situated in the county, and to levy and collect an annual tax on "said property" not exceeding one-half of 1 per centum of such value.

The amendment was made effective by the enabling Act of August 10, 1927, above outlined.

"Assessed values" are the values of property subject to taxation, the assessment being a necessary procedure to fix the tax on each item, and provide for its collection.

█ We discover nothing in this amendment imposing a tax on exempt property, nor stripping the Legislature of power to pass exemp-

tion laws in the future. Nor is there anything in this amendment subjecting to this tax all property assessable for state purposes rather than for county purposes.

Turning to the enabling act of August 10, 1927, looking to the construction of such roads and bridges, the terms "taxable property," etc., would naturally import property taxable for county purposes. The act does not define taxable property, but leaves that to be determined by general laws.

There are, however, certain provisions of the act which may be construed as looking to the imposition of this tax on all property assessable for state purposes.

Thus, in section 3 of the act, is written: "* * * Provided however, that the total amount of additional taxes levied under the provisions of this Act in any one year for the purposes aforesaid shall not exceed in the aggregate one-half of one percentum of the assessed value of the property situated in said county, according to the last completed assessment for state taxation."

Again in section 14, prescribing the contents of the notice of election for the authorization of bonds, such notice is to include "the estimated rate of tax levy which, on the basis of the last assessment of taxable property in said county for purposes of state taxation, it will probably be necessary to levy in order to pay at maturity the interest on the principal of such bonds so proposed to be issued by reason of each such improvement."

But the same section shows such rate is merely an estimate, and the county authorities are empowered to levy a greater or less rate from time to time as may be necessary to meet the bonded debt.

In the ballot prescribed, the voter authorizes a levy "on all the taxable property in the county" at such rate as shall be sufficient, etc.

Do these provisions operate as a repeal in part of the general exemption statute as applied to the county of Mobile? Is the exemption from taxes for "all county purposes" partially repealed by implication?

██ We note both acts were passed at the same session of the Legislature. They are to be construed in pari materia, each to be given effect as expressive of a consistent legislative purpose. The one is not to be construed as a partial repeal of the other, unless the language clearly shows such intent. Fidelity & Deposit Co. v. Farmers' Hdwe. Co. (Ala. Sup.) 136 So. 824; [1] City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159; Tucker v. McLendon, 210 Ala. 562, 98 So. 797; State ex rel. Sellers v. Murphy, Judge, 207 Ala. 290, 92 So. 661; Mills v. Court of Com'rs of Conecuh County, 204 Ala. 40, 85 So. 564; State,

---

[1] Ante, p. 477.

ex rel. Scholl v. Duncan, 162 Ala. 196, 50 So. 265; State ex rel. Tyson v. Houghton et al., 142 Ala. 90, 38 So. 761.

The provisions of the bond act above copied deal with the rate of taxation, and not with exemptions from taxation. Only by implication can they be construed to modify and affect a partial repeal of the exemption law.

While not wholly free from doubt, we conclude the rule of construction illustrated and defined in the authorities last above cited should and does govern this case.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

